IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00751-WJM-MEH

BRIAN HINMAN,

    Plaintiff,

v.

JONATHAN JOYCE; and
THE CITY AND COUNTY OF DENVER, COLORADO

    Defendants.

---

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT DENVER'S MOTION TO DISMISS

---

Plaintiff, Brian Hinman, by and through his attorney, Raymond K. Bryant of the Civil Rights Litigation Group, PLLC, hereby responds in opposition to the City and County of Denver's Motion to Dismiss the municipal claims against it, as follows:

Defendant Denver seeks the dismissal of Plaintiff's municipal liability claims based upon the assertion that Plaintiff has pled only "conclusory" allegations in his Complaint, which Denver contends should be consequently disregarded. However, Denver's challenge is predicated on a fundamental misapplication of the *Twombly/Iqbal* standard it uses to criticize Plaintiff's Complaint allegations, as well as a dismissive approach it takes to the basic principles governing complaint allegations during 12(b)(6) evaluations. In essence, Denver attempts to impose a heightened pleading standard upon Plaintiff by suggesting that he must *prove* his complaint allegations with specificity and support in order for them to be recognized by the Court. But such an approach is much more akin to the evidentiary standards imposed at summary judgment. At this stage of the

litigation, Plaintiff's Complaint allegations are entitled to the presumption of truth. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). The court must view all reasonable inferences in favor of the plaintiff. *Archuleta v. Wagner,* 523 F.3d 1278, 1283 (10th Cir. 2008). Plaintiff's Complaint allegations properly put Defendant Denver on notice as to the appropriate description of Denver's policies/practices and failure to train/supervise, which acted as a moving force behind the constitutional deprivations at issue. Once the factual matter contained therein is properly recognized, Plaintiff's allegations are more than sufficient to pass muster under *Twombly*/*Iqbal*'s plausibility standard. Accordingly, Defendant's Motion should be denied.

> I.      **Defendant's Misapplication of *Twombly/Iqbal*'s "Conclusory" Allegations**

There is no dispute that the Supreme Court's rulings in *Twombly* and *Iqbal* provide the measuring stick by which complaint allegations should be judged. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). However, Defendant misconstrues and misapplies the "conclusory" standard in relation to Plaintiff's Complaint allegations.

Defendant's Motion asserts in several places that Plaintiff has pled only "conclusory allegations" by arguing that Plaintiff makes "bald assertions" that lack "specific facts" and/or that Plaintiff makes "unsubstantiated" claims that are "not supported" with sufficient factual allegations. *See, e.g.*, Def. Mot. at 5–6, 10–12. Such criticisms appear to concern the depth of the *factual* detail and/or the evidentiary support asserted in the Complaint, and not the *legal* nature of Plaintiff's Complaint allegations. While many lawyers and scholars argue that *Twombly/Iqbal*'s standard regarding conclusory allegations is unclear,[1] *Iqbal* itself makes apparent that the Supreme

---

[1] *See, e.g.*, Donald J. Kochan, *While Effusive,"Conclusory" Is Still Quite Elusive: The Story of a Word, Iqbal, and a Perplexing Lexical Inquiry of Supreme Importance,* 73 U. Pitt. L. Rev. 215 (2011).

Court critically used the term "conclusory" to refer to the type of language in a complaint that is "*legally* conclusory," not merely *factually* conclusory. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to *legal conclusions*.") (emphasis added).

The opinion in *Iqbal* implicitly drew a fundamental distinction between legal conclusions and factual assertions where it said, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Supreme Court demonstrated this concept with examples of inappropriate conclusory allegations, including:

> [P]etitioners "knew of, condoned, and willfully and maliciously agreed to subject him" to harsh conditions of confinement "as a matter of policy, solely on account of his religion, race, and/or national origin and for no legitimate penological interest."
>
> Ashcroft was the "principal architect" of this invidious policy, and that Mueller was "instrumental" in adopting and executing it.

*Id.* at 680–81. The Court stated that these allegations amounted to nothing more than bare legal assertions because they recited the elements of a constitutional discrimination claim.

In contrast, factual allegations that describe the "who, what, when, how and where" of alleged misconduct, instead of the legal conclusion to be drawn from those factual allegations, are generally considered to be appropriate and not subject to disregard. Even if factual allegations are made in the form of general descriptions of conduct, general descriptions of policies involved, or generally identifiable patterns of misconduct, specific supporting detail about those assertions is not required to make them appropriately factual. For example, the *Iqbal* Court found the following allegations to be "nonconclusory":

> [T]he FBI, under the direction of Defendant MUELLER, arrested and detained thousands of Arab Muslim men as part of its investigation of the events of September 11.

> The policy of holding post-September-11th detainees in highly restrictive conditions of confinement until they were "cleared" by the FBI was approved by Defendants ASHCROFT and MUELLER in discussions in the weeks after September 11, 2001.

*Id.* at 681–82 (distinguishing and analyzing these factual allegations separately from the preceding conclusory allegations).

Even though these allegations could easily be described as lacking specificity and/or support in their detail (e.g., who were these thousands of men, when/where were they arrested, by what means were they detained, in what specific "restrictive" conditions of confinement were they kept, and in what handbook was the policy established), the Court found these allegations to be well-pled and taken as true. They were not considered to be "bald assertions" that needed to be further supported with evidentiary detail or substantiation.

These examples explain the Supreme Court's findings that improper conclusory allegations are those statements that constitute "mere threadbare recitals of a cause of action" or "formulaic recitations of the elements of a cause of action," while simultaneously confirming that Rule 8 "does not require detailed factual allegations." *Id.* at 678. Popularly quoted phrases in the *Iqbal* opinion that condemn "naked assertions devoid of factual enhancement" must be understood within context of the court's criticisms, which explain that a proper complaint allegation must include more than just "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* They should identify and describe how the defendant is alleged to have harmed the plaintiff.

Recognition of the implicit distinction between allegations that are legally conclusive and those that are, perhaps, *factually* conclusive, turns out to be quite important when considering how some lawyers in the defense bar have begun to use the term "conclusory" to distort the notice pleading requirements detailed in *Twombly* and *Iqbal* to suggest heightened specify requirements. Outside of *Twombly* and *Iqbal*'s usage, the term "conclusory" is often used colloquially to mean

"consisting of or relating to a conclusion or assertion for which no supporting evidence is offered," 237 Merriam-Webster's Collegiate Dictionary 239 (10th ed. 1993),[2] or "relating to or being a conclusion of fact presented without statement of specific supporting evidence upon which the conclusion is based," American Heritage Dictionary of the English Language (5th ed. 2014).[3] Applying such a lay definition to pleading standards is obviously problematic. For example, pleadings are not meant to contain, or be judged, by their evidentiary support. Additionally, detail regarding factual allegations often only becomes evident after a plaintiff has had an opportunity to conduct discovery of information within a defendant's control. Allegations in a complaint, at the motion to dismiss stage, are entitled to the presumption of truth. The notice pleading standard in Rule 8 "still lives." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191–92 (10th Cir. 2012).

Despite the danger of inappropriately conflating a colloquial meaning of the word "conclusory" with *Iqbal*'s reference to legally "conclusory" allegations, defense bar motions have begun to urge courts to implicitly apply something more akin to the colloquial usage of the word "conclusory," by using the term to refer to *factually* conclusive statements, assertions, or claims in a complaint rather than only *legally* conclusive allegations. The arguments assert, most often, as Defendant argues here, that a plaintiff's allegations lack sufficient factual "specificity" and/or that they lack "sufficient support" or "substantiation." *See, e.g.*, Def. Mot. at 5–6, 10–12. These arguments are not in lockstep with the criticisms of *Twombly* and *Iqbal*, because the Supreme Court has made categorically clear that *factually detailed allegations are not required in a complaint*. *Twombly*, 550 U.S. at 555. "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Asten v. City of Boulder*, 652 F.Supp.2d 1188, 1195 (D. Colo. 2009) (regarding municipal claims); *Erickson*

---

[2] Merriam-Webster is also available online at http://www.merriam-webster.com/dictionary/conclusory.
[3] American Heritage is also available online at https://www.ahdictionary.com/word/search.html?q=conclusory.

*v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). Rule 8 mandates a "short and plain statement" of the claim. Fed.R.Civ.P. 8(a)(2). Thus, general assertions should comply with Rule 8 so long as the allegations are factual in nature, and do not rely on *legally conclusive* terminology to define the general elements of a cause of action in a catch-22 fashion.

Courts have reiterated time and time again that *Twombly* and *Iqbal* did not create a heightened pleading standard for civil rights claims. *See Johnson v. Shelby*, 135 S.Ct. 346, 347 (2014); *see also Asten*, 652 F.Supp.2d at 1199 (citing *Currier v. Doran*, 242 F.3d 905, 916–17 (10th Cir. 2001)). The Supreme Court's standards should not be misinterpreted or misapplied to create a heightened or detailed specificity requirement in factual complaint allegations for municipal claims or otherwise. Therefore, Defendant's repeated assertions that Plaintiff has failed to plead "sufficient facts" or that the factual assertions provided are, somehow, "bald" assertions without sufficient "support" or "substantiation" are unavailing. Defendant does not specifically identify any allegations in Plaintiff's Complaint that rely on legally conclusory language. Where Defendant repeatedly criticizes Plaintiff's "bald claims" and "assertions," it repeatedly refers to factually-rich information in the Complaint. *See, e.g.*, Def. Mot. at 10 (criticizing Plaintiff's allegations regarding Denver's failure to train Detective Joyce in how to evaluate probable cause and/or to skeptically view information provided by unreliable informants as "bald assertions" lacking "the necessary weight or context to support municipal liability"). A threadbare recital of the legal elements of the cause of action regarding the failure to train would read something more akin to a blanket assertion that "the city failed to adequately train the detective in some [unidentified] topic, which in some [unidentified] manner, led to harm." *Compare the second element of a municipal practice violation with Iqbal's condemnation of "unadorned, the-defendant-unlawfully-harmed-me" types of accusations*. Defendant overlooks the fact that the

assertions it criticizes as factually conclusory contain within them the very factual material necessary to identify and describe the substance of the municipal claims at issue. Plaintiff need not produce an addendum to the Complaint proving the underlying validity of the assertions.

**II. Plaintiff's Complaint allegations assert sufficient factual content to put Denver on fair notice that certain municipal policies, practices, and failures in training/supervision were predictably and plausibly a moving force behind the wrongful detention and prosecution at issue.**

Plausibility is the second part of a 12(b)(6) analysis and concerns the question whether a complaint's factual allegations, taken together as true, assert *sufficient* factual matter to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.[4] Where the Supreme Court referred to the sufficiency of allegations that may make inferences of a constitutional violation "possible" or "plausible," it has made clear that such an inquiry should not involve questions related to whether the assertions are true or are likely to be proven. *See id.* ("The plausibility standard is not akin to a 'probability requirement' . . . ."). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 550 U.S. at 556). Our Circuit has interpreted the plausibility requirement as a "refinement" of the Fed. R. Civ. P. Rule 8 standard that complaint allegations need only be sufficient to give a defendant "fair notice" of the claim and grounds upon which it rests. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191–92 (10th Cir. 2012) ("Rule 8(a)(2) still lives. . . [t]here is no indication the Supreme Court intended

---

[4] It is notable that "sufficiency" is a benchmark used primarily by the Supreme Court in their analyses concerning factual plausibility and not legal conclusiveness, since the Court views the conclusory test as a question regarding the nature of the factual/legal language used, and not as a question of whether there is enough factual content included in an allegation to make it more conclusory than not.

a return to the more stringent pre-Rule 8 pleading requirements."). Consistent with Rule 8, the Tenth Circuit has been mindful that defendants may attempt to use the concept of plausibility to place an improper burden on plaintiffs, and that plaintiffs will need discovery before they can satisfy implementation of abrasive plausibility requirements when there is asymmetry of information. *See id.* at 1191 (citing *Gee v. Pacheco,* 627 F.3d 1178, 1185 (10th Cir. 2010)). As a result, the Tenth Circuit has made clear that plausibility is a facial requirement that refers to the "scope" of the theory asserted and not the detail of the factual averments alleged. *Id.* This standard does not require the Court to review the depth of detail in the factual allegations, but only to determine whether, on their face, the allegations allege factual content that is consistent with the elements required for each theory of liability asserted. *See id.* at 1191–92. The responsibility of this Court is simply to determine "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Plaintiff primarily alleges three theories of municipal liability that link Denver to the underlying unlawful seizure and detention at issue in the Complaint:

(1) Denver maintained a policy and/or practice of exchanging early release to convicted criminals who provide information about the alleged criminal conduct of others without regard for whether or not the information provided was true—which policy had the predictable effect of motivating the informant in this case to make up false allegations regarding Plaintiff;

(2) Denver failed to train the rookie detective in important areas related to the evaluation of reliable and trustworthy information and the assessment (and vitiation) of probable cause, in order to protect persons in Plaintiff's position from

> suffering from unwarranted detentions and prosecutions like the one that occurred here; and
>
> (3) Denver empowered the rookie detective to act with unfettered discretion to make decisions on its behalf regarding the seizure, detention, and prosecution of persons in Plaintiff's position, without adequate training (as detailed above) and without adequate safeguards or supervisory oversight necessary to ensure that he did not cause the type of unwarranted detentions and prosecutions that lacked probable cause.

Pl. Compl. at ¶¶ 51–55. While Plaintiff acknowledges that facts supporting these theories overlap, Defendant provides no legal support for its faulty assertion that the theories are dependent upon each other such that Plaintiff would have to prove all of the allegations and theories in order to prove any theory of liability against the city. *See* Def. Mot. at 5. Each of the theories of municipal liability may stand on its own, which Plaintiff addresses in turn.

    a.    <u>Policy and/or Practice</u>

In order to sufficiently allege municipal liability pursuant to a policy and practice theory, Plaintiff must allege that a municipal policy or custom exists and was a moving force behind the violation. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

In support of each of these elements, Plaintiff alleges that Denver has a policy and/or practice of bartering early release to criminals who provide information about other crimes, without regard to whether the information provided would be reliable, trustworthy, or true. Pl. Compl. at ¶¶ 2, 16, 51. Plaintiff alleges this policy/practice was a moving force behind the violation where the policy incentivized false criminal storytelling and motivated the inmate informant in the circumstances of this case to fabricate the false allegations about Plaintiff. *Id.* at ¶¶ 17–19, 52, 55.

This Court can be sure that the policy is one upon which the city bears the requisite degree of culpability, because Plaintiff alleges that the city knew its policy had previously motivated other criminals to concoct false storytelling by those seeking lenient treatment and/or early release. *Id.* at ¶¶ 16, 53. Most importantly, it was the rookie detective's reliance upon the fabricated story that inevitably caused Plaintiff to be wrongly detained and prosecuted for crimes he did not commit. *Id.* at ¶ 41.

In addition to these facts, Plaintiff has adduced a multitude of other related facts that provide even further context for the allegation that the policy was a moving force behind the violations at issue. Plaintiff alleges that the inmate informant knew of Denver's policy/practice through a track record of previously seeking reduced sentences and/or lenient treatment, (*Id.* at ¶ 16), that at each meeting where the inmate informant provided false information he also conspicuously made clear that he wanted to be released early in exchange for the information provided, (*Id.* at ¶ 21), and the rookie detective reinforced the informant's expectation that he would be released pursuant to the policy/practice by communicating that the inmate informant's request for release was being taken seriously. *Id.* These facts, taken together with the allegations of the constitutional violation described in the Complaint, fairly make out a claim for municipal liability.

### b. Failure to Train

In order to allege municipal liability pursuant to a failure to train theory, Plaintiff must allege an inadequacy of training in circumstances where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). Deliberate indifference may be shown

with "actual or constructive notice" that a municipality's "action or failure to act is substantially certain to result in a constitutional violation." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). In most instances, the requisite notice can be established with a pattern of similar conduct. *Id.* However, deliberate indifference may also be shown if a violation of federal rights is a "highly predictable" or "plainly obvious" consequence of a municipality's failure to act, "such as when a municipality fails to train an employee in specific skills needed to handle recurring situations." *Id.* at 1307–08.

Plaintiff's Complaint allegations assert that Denver failed to train the rookie detective in several important areas necessary for his work, including: (a) the veracity and reliability of inmate informant allegations in the context of an investigation, particularly where such informants request early release in exchange for the information they offer, (Pl. Compl. at ¶ 53); (b) the assessment of probable cause in the totality of the circumstances and/or how/when probable cause could be vitiated during a police investigation, (*Id.* at ¶ 54); and (c) the need to communicate and/or act in the interests of justice when unreliable and/or false information demonstrated a lack of (or vitiation of) probable cause at the seizure and arrest stages of a prosecution. *Id.* at ¶¶ 2, 55.

Plaintiff alleges that these training deficits were closely connected to the constitutional violation at issue because false information had been provided by an unreliable inmate informant who sought to be released in exchange for the information he provided, (*Id.* at ¶¶ 19, 21), the information was demonstrably false when compared to information the rookie detective collected during his investigation, (*Id.* at ¶¶ 23–25), and the detective failed to recognize and/or act on the false and exculpatory information that vitiated probable cause, (*Id.* at ¶¶ 28, 41), which was the source of the unwarranted detention and prosecution this case. *Id.* at ¶¶ 29–30.

Plaintiff's allegations assert that Denver had received the notice necessary to infer deliberate indifference that a constitutional deprivation would likely occur, both because (a) Denver knew that criminals had previously been motivated to provide false information, (*Id.* at ¶¶ 16, 53), and (b) the deficiencies in training related to such important areas of any detective's reoccurring responsibilities that a violation of federal rights would be a "highly predictable" or "plainly obvious" consequence. This latter assertion requires the Court to make reasonable inferences from Plaintiff's Complaint allegations, that the failure to train the detective in the areas identified created a high degree of predictability that a violation of a person's rights could occur. *Brown*, 520 U.S. at 409–10. Such an inference is warranted in circumstances where a detective's primary, reoccurring job responsibilities include investigating criminal allegations and assessing whether sufficient probable cause exists to seize and/or detain suspects, just like he did in this circumstance, (Pl. Compl. at ¶¶ 22–29), and the detective was not provided the training tools necessary to perform that job within constitutional limits. *Id.* at ¶¶ 53–55. Defendant's failure to train in these areas is akin to arming an officer with a firearm and failing to train him on the constitutional limitations on the use of deadly force. *See City of Canton*, 489 U.S. at n.10.

c. Failure to Supervise

Failure to supervise claims are treated the same as failure to train claims (which may often be indistinguishable from each other). *Whitewater v. Goss*, 192 F. App'x 794, 797 (10th Cir. 2006).

Without providing adequate training with regard to the reliability of criminal informants, and the assessment and/or vitiation of probable cause, the only way Denver could responsibly empower a new detective with the authority to seize and detain defendants for criminal prosecutions would be to provide direct oversight/supervision of the detective in these areas. But Plaintiff's allegations assert that the detective was given "unfettered discretion" to make these

kinds of judgment calls, without appropriate safeguards or the training necessary to prevent the type of unwarranted seizures which lack probable cause to support them. Pl. Compl. at ¶¶ 53–54. These allegations, combined with those relating to the failure to train theory, set the rookie detective on course to predictably violate the rights of individuals accused of criminal conduct by unreliable inmate informants. *Id.* at ¶¶ 28–29.

Contrary to Defendant's assertions, Plaintiff's Complaint does not rely on mere "conclusory" allegations reflecting "threadbare recitals of the elements of a cause of action." Plaintiff's Complaint allegations, use factually-rich language, to describe a criminal investigation gone horribly wrong under circumstances where Denver knew its policy/practices involving the exchange of favors to criminals could encourage false storytelling, and where the city did not prepare its detective to properly handle such common police investigations without violating the constitutional rights of persons who would likely be targeted and, ultimately, unreasonably seized/prosecuted. The allegations are sufficient to spell out a cause of action pursuant to a faulty policy/practice and failure to train/supervise municipal theory, and each of which should be permitted to proceed.

**WHEREFORE**, for the foregoing reasons stated above, Plaintiff respectfully prays that this Court DENY Defendant's Motion to Dismiss.

Respectfully submitted this 15th day of June, 2015.

Civil Rights Litigation Group, PLLC

*s/ Raymond K. Bryant*

Raymond K. Bryant
1391 Speer Blvd., Suite 705
Denver, CO 80204
P: 720-515-6165
F: 303-534-1949
Raymond@rightslitigation.com